## ATCHISON, T. & S. F. RY. CO. v. ST. LOUIS & S. F. R. CO. *et al.*

No. 1423.  Opinion Filed June 19, 1913.

Rehearing Denied December 17, 1913.

(135 Pac. 353.)

1.  CARRIERS—Delay of Shipment—Liability of Initial Carrier. In an action against both the initial and terminal carrier for damages caused by negligent delay, although the initial carrier has notice of the importance of prompt delivery, and that loss of profits would result from delay, where all the delay is shown to have been on the terminal line, then, in the absence of statute or contract to such effect, the initial carrier will not be held liable for any of the damages resulting, although it may have failed to deliver such special notice, unless it appears that such delay was the proximate result of the failure to deliver such notice.

2.  NEGLIGENCE — Proximate Cause—Burden of Proof—Question for Jury. Damages, to be recoverable for negligence, must appear to be the proximate result of the negligence shown, and the question as to what is the proximate cause of an injury, or what is the immediate or proximate result of a given act, is generally one of fact for the jury.

3.  CARRIERS — Delayed Shipment — Proximate Cause — Question for Jury. In an action against two carriers for damages, where it appears that each has been guilty of separate acts of negli-

gence, and that plaintiff has sustained damages, but there is an issue of fact as to which carrier's negligence was the proximate cause of the injury, and where such fact can be determined only from the evidence and circumstances of the case, an instruction which takes such fact from the jury is erroneous.

(Syllabus by Harrison, C.)

*Error from District Court, Washington County;*

*T. L. Brown, Judge.*

Action by the Sun Drilling Company against the Atchison, Topeka & Santa Fe Railway Company and another for damages. From a judgment against it, the Atchison, Topeka & Santa Fe Railway Company brings error. Reversed and remanded.

*Cottingham & Bledsoe,, George M. Green,* and *Devereux & Hildreth,* for plaintiff in error.

*Montgomery & O'Meara,* for defendants in error.

Opinion by HARRISON, C.  This action was begun by plaintiff, the Sun Drilling Company, in the United States Court for the northern district of the Indian Territory at Bartlesville on May 18, 1907.  After statehood the cause was transferred to the district court of Washington county, and was tried in February, 1909, and judgment rendered upon the following verdict, to wit:

"We, the jury impaneled and sworn in the above entitled cause, do upon our oaths find for the plaintiff and against the Atchison, Topeka & Santa Fe Railway Company, and fix plaintiff's recovery at $1,200, and further find in favor of the St. Louis & San Francisco Railroad.  John F. Algeo, Foreman."

From the judgment on this verdict and order overruling motion for new trial, the Atchison, Topeka & Santa Fe appeals, making the St. Louis & San Francisco a party defendant in error, and alleging ten separate grounds for reversal.

The material facts are substantially as follows:  The Sun Drilling Company was a corporation organized for the purpose of drilling for oil and gas.  It had contracts for drilling wells in the vicinity of Bristow.  It had a string of drilling tools at Bartlesville, and sought to ship same to Bristow, where the drilling

contracts were awaiting. The string of tools was loaded for shipment at Bartlesville on the Santa Fe Railway. At the time they were loaded for shipment, and in fact before they were loaded, the shipper notified the agent of the Santa Fe at Bartlesville of the nature of the shipment, the character and purpose of the string of tools, and that it had contracts for drilling wells in the neighborhood of Bristow, which were then waiting to be fulfilled, and that the shipper would sustain loss by any delay in the shipment. Thereupon, with full notice of the purpose of the string of tools, and of the importance of a prompt shipment, and of the fact that the shipper would sustain damage by each day's delay in shipment, the Santa Fe contracted to deliver the tools over its lines and its connecting lines to Bristow. The goods were shipped by the Santa Fe without delay, and with reasonable promptness, and delivered to its connecting carrier, the St. Louis & San Francisco, at Tulsa. But, while the shipment was delivered in good order and without delay to the Frisco, the Santa Fe failed to impart to the Frisco the special notice it had as to the character and purpose of the shipment, and as to the contracts which the shipper had in waiting at Bristow, and that special damage would result from any delay in shipment. The Frisco took charge of the shipment; but, instead of delivering them promptly at Bristow, the goods did not reach Bristow, or at least all of them did not, for about 45 days thereafter. It seems that the goods were separated and put into different cars by the Frisco, and one car with a portion of the tools was delivered at Bristow within eight or ten days; but the other car with the remainder of the tools was lost on the route, and delayed for about 45 days, during which time the shipper was unable to work at its contracts, but was compelled by reason of not getting a portion of the tools to remain idle during the time, and during the time it was unable to procure like tools at Bristow, and made no effort to procure them from other places, for the reason that they were making daily inquiries of the Frisco as to when the tools would probably be delivered, and were being daily informed by the Frisco that they were expecting the tools any day. The action was brought against both companies for the

damages resulting, and recovery sought upon the theory of joint negligence of both, and the concurrent negligence of each. Suit was brought for $2,000, and a verdict obtained for $1,200.

The Santa Fe, plaintiff in error, contends that the judgment against it is erroneous, and ought to be reversed, for the reason that the shipment was made under a written contract which limited its liability to its own lines, and which provided that its liability should cease upon delivery in good order to a connecting line, and that the evidence shows conclusively that the delay all occurred on the connecting line, the Frisco, and that whatever damage may have been sustained was the result of such delay, and that the Santa Fe should not be held liable. On the other hand, the Sun Drilling Company contends that the delay on the Frisco line was caused by the failure of the Santa Fe to deliver the special notice as to the character and purpose of the shipment, and that therefore the Santa Fe is liable for all the damage sustained. The trial court took this view of the case, and in paragraph 4 instructed the jury as follows:

"Instruction No. 4. If the defendant, the Atchison, Topeka & Santa Fe Railway Company, failed to communicate to the connecting carrier, the St. Louis & San Francisco Railroad Company, the information referred to in instruction No. 2, then you should find for the plaintiff against the defendant, the Atchison, Topeka & Santa Fe Railway Company, even though you may believe that it is guilty of no other negligence in delivering the articles to the connecting carrier."

Now, let it be borne in mind that the shipment in question is purely a local shipment, and that therefore the rule which makes the initial carrier liable for all damages in interstate shipments is in no wise applicable.

It is very evident from the record that the jury followed the foregoing instruction literally. Hence we are brought to the one decisive question whether an initial carrier, for failure to deliver special notice as to the shipment, shall be held liable for all damages sustained, whether such damages be the proximate result of the failure to deliver such notice or not. We do not take this view of the law. Nor have we been able to find where any other court of last resort has taken such view. Plaintiff in error boldly

asserts that no case announcing such doctrine can be found, and defendant in error has failed to cite any case in point, and, although we have made a diligent search, we have been unable to find a case exactly in point. Many authorities, it is true, as in *Illinois Central Railroad Co. v. Southern Seating & Cabinet Co.*, 104 Tenn. 568, 58 S. W. 303, 50 L. R. A. 729, 78 Am. St. Rep. 933, 6 Am. & Eng. (2d Ed.) 626, and authorities cited in notes, seem to hold that, for failure to deliver special instructions to a connecting carrier, an initial carrier is liable for all damages sustained. But an examination of such cases shows that most of them are cases where the special instructions in question were instructions as to a particular route, rather than notice as to prompt delivery, and that, by failing to give such instructions, or by violating same, and misrouting the shipment, the delay occurred, and the damage resulted. In all such cases, however, the damages sustained are plainly the direct and proximate result of the failure to deliver the instructions as to route. Other authorities would appear to hold the initial carrier liable for failure to deliver such instructions, notwithstanding the contract which limits liability to its own lines; but such decisions are based either upon statutes which expressly make the initial carrier liable for all damages, with a right of recovery against the connecting carrier for the damage caused by it, as in Texas, South Carolina, and other states, or are cases where the damages are clearly the proximate result of the failure to deliver the special instructions. But we have been unable to find any case where the initial carrier has been held liable for the whole damage for failure to deliver a special notice of the character of the notice in question here, and where the shipping contract with the initial carrier specifically provides, as in the case at bar, that its liability should be limited to its own lines, and should cease upon delivery in good order and without delay to a connecting carrier, and where such contracts are not prohibited by law, as was the case when this shipment was made, and where the record fails to show that the damages sustained were the proximate result of the failure to deliver such notice, which is also true in the case at bar.

The record plainly shows two of the elements necessary to recovery, namely, negligence and damage. It shows that two days was a reasonable time for the delivery, and that there was a delay of 45 days, without any valid excuse for such delay. It shows that the shipper was damaged by reason of the delay. The problem, therefore, is to locate the negligence, fix the liability, and estimate the damage. Now, it appears from the record that each carrier was guilty of some negligence. The Santa Fe for failure to deliver the notice as to the importance of prompt delivery, and the Frisco for failing to discharge its legal obligations to deliver within a reasonable time regardless of notice. Neither carrier is liable unless the negligence of one or the other was the proximate cause of the detriment suffered, and each is liable for the damage proximately resulting from its separate independent negligence, or both liable for concurring acts of negligence.

"The maxim '*In jure non remota causa sed proxima spectatur*' is Englished in Bacon's constantly cited gloss: 'It were infinite for the law to judge the causes of causes, and their impulsions one of another; therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree.' Liability must be founded on an act which is the 'immediate cause' of harm or of injury to a right." (Webb's Pollock on Torts, pp. 30, 31.)

"It is not only requisite that damage, actual or inferential, should be suffered, but this damage must be the legitimate sequence of the thing amiss. The maxim of the law here applicable is that in law the immediate and not the remote cause of any event is regarded, and in the application of it the law rejects, as not constituting the foundation for an action, that damage which does not flow proximately from the act complained of. In other words, the law always refers the injury to the proximate, not to the remote, cause." (Cooley on Torts [3d Ed.] 99.)

See, also, Addison on Torts, 6.

"Liability for conduct does not attach, unless the conduct was the legal cause of the injury complained of." (Jaggard on Torts, 61.)

Street on Foundations of Legal Liability, p. 109, vol. 1, says:

"The law on this subject proceeds from a general principle running through the entire law of tort to the effect that always

before liability can arise it is necessary that a causal relation, such as the law recognizes as being sufficient, should exist between the damage which is complained of and the act which occasions the damage. If such a relation does not exist, the damage is said to be remote, and cannot be recovered in any form of action. If such a relation does exist, then the damage is said to be a proximate result of the wrongful act to which it is attributed, and, conversely, the wrongful act is said to be the proximate cause of the damage. The terms 'proximate' and 'remote' are thus respectively applied to a recoverable and nonrecoverable damage."

Also, 13 Cyc. 25; 8 Am. & Eng. (2d Ed.) 614, and authorities cited in notes.

Now the decisive question under the evidence and the provisions of the shipping contract was, Which carrier's negligence was the proximate cause of the damage? Was all the delay and damage the direct and proximate result of the Santa Fe's failure to deliver the special notice, or was it all or partly the result of the Frisco's failure to discharge its plain legal obligation without any special notice to deliver the shipment without unreasonable delay? This was a question to be determined from all the facts and circumstances of the case, and we think under the facts and circumstances disclosed by the record the court erred in eliminating this question from the jury in the foregoing paragraph of its charge.

"The question as to what is the natural or proximate cause of a loss, or what the probable or immediate consequences of a given act, has been generally held one of fact for the determination of a jury; a question which is, ordinarily, not one of science or legal knowledge, but is for the jury to determine in view of the accompanying circumstances, and in accordance with common sense and understanding.' (8 Am. & Eng. 581.)

"The matter is usually one of evidence, which should be left to the decision of the jury." (13 Cyc. 27, and authorities under note 64.)

The jury could determine which carrier was liable, or whether either or both were liable, only by determining from the evidence what was the proximate cause of the damage, and the question of proximate cause, the basic principle of recovery, was taken away from the jury in the foregoing instruction. The record does not show that the verdict was for special damages arising

from lost profits, nor does it show that the entire 45 days' delay and the consequent ordinary damages were all the direct result of the Santa Fe's failure to deliver the notice. Regardless of any special notice, the Frisco was under a legal obligation to forward the shipment without unnecessary delay, and under the shipping contract, no matter what the special notice may have been, it would have been required to do no more. It would not have been required to change its regular schedule of trains, nor send out a special train, nor to discriminate against other freight ready for shipment. The Santa Fe had a right to ssume that the Frisco would discharge its legal obligation to forward the shipment without unreasonable delay, and under the shipping contract it had no authority to impose any greater obligation on the Frisco. Hence, if it could impose no greater obligation by the special notice than that already imposed by law, and the record should show that the Frisco violated its legal obligation by an unreasonable and inexcusable delay, the law will not hold the Santa Fe liable for all the damages sustained, unless it be shown that all the delay was caused by the failure to give the notice. This was a question to be determined by the jury under proper instructions, and from all the facts and circumstances in the case.

The judgment should, therefore, be reversed, and the cause remanded.

By the Court: It is so ordered.