JANOW v. LEWIS et al.

No. 32262. April 16, 1946.

Rehearing Denied Sept. 10, 1946.

*172 P. 2d 315.*

Walter H. Thomas, of Woodward, and Twyford, Smith & Crowe, of Oklahoma City, for plaintiff in error.

Butler & Rinehart, of Oklahoma City, for defendants in error.

RILEY, J. Plaintiff in error was plaintiff in the trial court. C. S. Lewis, R. E. Boen, and John C. McConnell were copartners doing business under the firm name and style of Lewis & Company. C. S. Lewis died prior to the commencement of this action and Ceylon S. Lewis, Jr., and Lois Whaley were appointed executors of his estate and they together with Boen and McConnell are defendants.

Plaintiff commenced this action to recover damages for the wrongful death of her husband, David J. Janow, alleged to be due to the negligence of the defendants. The partners were contractors engaged in construction at the Enid Air Field. Decedent, a common laborer, was an employee of the contractors and was killed in the course of his employment.

In connection with the construction, it became necessary for the contractor to excavate a ditch two feet deep along and parallel with one of the landing runways of the Air Field. The ditch was about 25 feet from the edge of a runway. On January 25, 1944, shortly before 6 o'clock p. m., the superintendent of the contractor directed deceased to go to the ditch and light warning flares along it. While engaged in lighting flares, deceased was run down and killed by an airplane operated by a student cadet. The airplane landed near the edge of the runway about 200 feet from where deceased was working. The plane ran off the runway and along the ditch in such a way that the propeller of the plane struck and instantly killed deceased.

Plaintiff alleged that defendants violated their duties toward deceased; that they were guilty of negligence causing deceased's injury and death, in that they failed to send another person along to assist deceased and give him warning of the approach of airplanes; that defendants failed to notify the officers in charge of the Air Field that the ditch was being constructed at the place, and they failed to notify such officers that planes should not "ground" at or near the ditch. Plaintiff concludes that defendants failed to furnish deceased a reasonably safe place in which to work.

Defendants answered and admitted that deceased was at the time their employee; that he was killed as the result of an accident. They denied that they were negligent. They alleged that the cause of the accident was an intervening cause, towit, the airplane either got out of control through no fault of the student pilot or as a result of some condition over which the pilot had no control; and in either event defendants had no control and no authority or duty to direct the operation of the airplane, but the air operation was an independent matter which caused the injury and death and the independent cause was not one concurring with any act of defendants.

A jury was empaneled by the learned trial judge and the issues were subject to proof, but at the close of plaintiff's evidence, defendants demurred to the evidence. Defendants' demurrer was sustained, the action was dismissed, and plaintiff has appealed.

Plaintiff contends the evidence proves defendants' negligence; that defendants' negligence was the proximate cause or a concurring cause of deceased's injury and plaintiff's damages.

Plaintiff insists it was the defendants' duty to notify officers in charge of the Air Field of defendants' intention to open the ditch and it was the duty of defendants to obtain permission so to do before proceeding with excavation of the ditch.

Richard C. Pyle, a civil engineer, was assigned to the project as "Area Engineer" by the United States Engineer's office; his duties were to act as representative of the contracting office and to supervise the construction being done by the various contractors. He had supervision of the work done by Lewis & Company. He was the person designated by the Area Officers to contact the Flying Department, through Colonel Alston, who was designated as representative of that department. In the progress of the work, it was the duty of the two gentlemen mentioned to contact each other, so that if the Flying Department required the use of a runway it was the duty of Colonel Alston to advise the engineer so that progress of the work could be delayed for reasons of safety, and vice versa, so that if the engineer required the use of a runway, it was the duty of Pyle to contact Colonel Alston and avoid use by planes of the runway.

Mr. Pyle testified that the contractor did not ask permission to open the particular ditch at the time it was opened. He testified "By the technical provisions of the contract, it wasn't necessary to secure such permission," but by mutual agreement it was necessary before construction near the runway. But if such was the duty of the

contractor, the evidence does not show that defendants wholly failed to perform that duty because Mr. Pyle testified he was not the only man who had authority to grant such permission, and in testifying, Mr. Pyle said he had not given such permission. He said he was only speaking for himself, but that he was the only man who had authority to *request* permission of the Director of Flying, who had authority to finally grant it. Who the other person or persons were, who had authority to grant permission, or whether such permission was given by any other such person, the record is silent. If it be conceded that it was the duty of the contractor to notify the engineer or Director of Flying of intention to open the ditch and that the contractor failed so to do, it does not follow that such failure had any causal connection with the accident which resulted in death of plaintiff's husband.

The only purpose of the "mutual agreement" concerning permission to do construction at the time and place must have been informational in order to discontinue the use of the runway. The uncontradicted evidence is, according to Pyle, the engineer, that he himself observed the existence of the open ditch prior to 1 o'clock p.m., January 25, 1944, and he rebuked the contractor or his superintendent and ordered the contractor to stop all work in the area until he had "flagged" all the excavations, dirt and equipment. He then directed that flares be placed along the ditch at night. It thus appears that the engineer had full notice and knowledge of the open ditch five or six hours before the accident occurred. This was all the information that would have been necessary if the contractor had asked and obtained permission, in advance, to open the ditch. There was ample time to notify Colonel Alston, who, according to the testimony, was the only person with authority to do that which was being done when the accident occurred. Therefore, defendants' negligence in the premises, if any, was without causal connection in the result for which damages is sought.

It is contended that the evidence shows negligence on the part of defendants in not sending someone along with deceased to warn him of the approach of airplanes so he could get out of danger. It cannot be said that such a duty existed. The deceased, at the time of the injury, was engaged in a simple task. He was lighting flares and placing flags. It was not dark. The evidence shows fifteen minutes of daylight after the accident. The runway upon which the airplane landed was about 4,800 feet long and about 150 feet wide. The place where deceased was at work was 25 feet from the runway. The only danger to which deceased was exposed was that from an airplane which, in landing, might miss the runway, or land, as the plane did, on the runway and continue off of it. The danger was open and obvious to a man of ordinary intelligence. It was not a latent danger but one discernible by the employee.

A master is not bound to warn his servant against dangers patent and obvious to all. Phillips v. Tackett, 168 Okla. 143, 32 P. 2d 29.

There was no causal connection between the alleged negligent acts of defendant and the death of the employee; the death was the result of an intervening, efficient cause.

In Lynn v. Gessel Drilling Co., 172 Okla. 16, 43 P. 2d 1019, it is held:

"A demurrer to plaintiff's evidence in a personal injury action ought to be sustained, unless it is reasonably apparent that the injury complained of and suffered by the plaintiff is the causal effect from some wrongful act of the defendant, in violation of a legal duty owing to the plaintiff."

In Pittsburg County Ry. Co. v. Hasty, 106 Okla. 65, 233 P. 218, it is said:

"There must be a causal connection between the acts of the defendant and the injury suffered, and this causal connection must be established by the plaintiff, else he cannot recover."

Where plaintiff's evidence clearly

shows that there was no causal connection between the alleged negligent acts of the defendant and the injury sustained, timely demurrer to the evidence should be sustained. Guthrie, Adm'x, v. City of Henryetta, 177 Okla. 122, 57 P. 2d 1165.

The facts in the cited case were similar to the facts in the instant case. There, the facts were more favorable to the plaintiff than these. There, the place where deceased worked for his employer, the City of Henryetta, was in the street, a public highway. The highway had been closed to traffic by the erection of a barricade; there were three small lights near the barricade and 300 feet from the place where the repairs were being made. Deceased was employed to assist in the improvement. He had a small red flag and was ordered by the street commissioner to stand in front of the barricade to detour the traffic. While so engaged and at night, deceased was struck by an automobile being driven by a drunken driver. The employee died.

It was claimed that the injuries and damage were caused by the city's failure to provide a warning at a sufficient distance from the barricade, to warn drivers along the street and highway; that the city had failed to place red lights at the point where the barricade was erected; that the city had failed to provide deceased with a red light with which to signal the travelers and the small red flag was not a proper means with which to signal at night.

But it was held that no causal connection was established between any of the alleged acts of negligence and the deceased's injury.

In City of Okmulgee v. Hemphill, 183 Okla. 450, 83 P. 2d 189, where water had been permitted to accumulate in the street at the intersection, it compelled plaintiff to walk a distance along the intersecting street in order to cross, and while so doing, he was struck by an automobile. The action joined, as defendants, the city and the driver of the automobile. As to defendant city, it was held:

". . . the fact that there was water in the street was not the proximate cause of plaintiff's injuries, nor a concurring cause within the meaning of the law, but that the intervening independent act of the defendant Hess in the operation of his automobile was the proximate cause thereof. We cannot fairly arrive at any other conclusion."

Plaintiff contends that these cases are not in point. It is insisted that the evidence in the case at bar is such that if it be conceded the student pilot operating the airplane which struck deceased was negligent, a case of concurrent cause is presented. We don't think so.

"Concurrent causes within the rules above stated are causes acting *contemporaneously* and which together cause the injury, which injury would not have resulted in the absence of either. But where the negligence of one consists *in a condition merely* which is rendered injurious by the subsequent negligence of a third person, the acts of the two persons *are not concurrent*. So if two distinct causes are *successive* and *unrelated* in operation, they cannot be concurrent; one of them must be *the proximate* and the other *the remote cause,* and this applies where one of the unrelated causes is extraordinary and unexpected." 45 C.J. 925-926.

In the instant case it clearly appears that the condition brought about by defendants' negligence, or otherwise, was rendered *injurious* entirely by the subsequent acts of the pilot operating the airplane off the runway. This rendered the acts of defendants and the act of the pilot *nonconcurrent*. The act of the pilot was the proximate cause and it was sufficient of itself to cause the injury. But for affirmative act of the pilot, the injury would not have occurred.

The demurrer to plaintiff's evidence was properly sustained.

Affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, CORN, and DAVISON, JJ., concur.